FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**COMPLAINT**

Best (Last Name) 317 (Identification Number)

Shelby (First Name) Wayne (Middle Name)

Lenoir-Rowell Criminal Justice Center (Institution)

171 Savanah-Millard Rd. Poplarville, MS, 39470 (Address)

(Enter above the full name of the plaintiff, prisoner, and address plaintiff in this action)

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
MAR 28 2016
ARTHUR JOHNSTON
BY _____ DEPUTY

V.

Lenoir-Rowell Criminal Justice Center / Pearl River County Jail

(Enter above the full name of the defendant or defendants in this action)

CIVIL ACTION NUMBER: 1:16cv108 LG-RHW
(to be completed by the Court)

## OTHER LAWSUITS FILED BY PLAINTIFF

**NOTICE AND WARNING:**
The plaintiff must fully complete the following questions. Failure to do so may result in your case being dismissed.

A. Have you ever filed any other lawsuits in a court of the United States?   Yes (✓)  No ( )

B. If your answer to A is yes, complete the following information for each and every civil action and appeal filed by you. (If there is more than one action, complete the following information for the additional actions on the reverse side of this page or additional sheets of paper.)

1. Parties to the action: Lenoir-Rowell Criminal Justice Center

2. Court (if federal court, name the district; if state court, name the county): U.S. District Court Southern District of Mississippi, Gulfport, MS.

3. Docket Number: 1:16-cv-00081-HSO-JCG

4. Name of judge to whom case was assigned: Magistrate Judge John C. Gargiulo

5. Disposition (for example: was the case dismissed? If so, what grounds? Was it appealed? Is it still pending?): Pending

1

## PARTIES

(In item I below, place your name and prisoner number in the first blank and place your present address in the second blank. Do the same for additional plaintiff, if any).

I. Name of plaintiff: Shelby Wayne Best  Prisoner Number: 217

Address: Pearl River County Jail
200 South Main Street
Poplarville, MS. 39470

(In item II below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use the space below item II for the names, positions, and places of employment of any additional defendants.)

II. Defendant: Lenoir-Roswell Criminal Justice Center is employed as Housing Pre-sentence, State, Federal Inmates Pearl River Pearl River County Jail / Lenoir Roswell Center

The plaintiff is responsible for providing the court the name and address of each plaintiff(s) as well as the name(s) and address(es) of each defendant(s). Therefore, the plaintiff is required to complete the portion below:

PLAINTIFF:

NAME: Shelby Wayne Best    ADDRESS: Pearl River County Jail, 200 South Main Street, Poplarville, MS. 39470

DEFENDANT(S):

NAME: Lenoir-Roswell Criminal Justice Center / Pearl River County Jail

ADDRESS: 171 Savanah-Millard Rd Poplarville, MS. 39470, 200 South Main Street, Poplarville, MS. 39470

2

## GENERAL INFORMATION

A. At the time of the incident complained of in this complaint, were you incarcerated because you had been convicted of a crime?

   Yes ( )   No (✓)

B. Are you presently incarcerated for a parole or probation violation?

   Yes ( )   No (✓)

C. At the time of the incident complained of in this complaint, were you an inmate of the Mississippi Department of Corrections (MDOC)?

   Yes ( )   No (✓)

D. Are you currently an inmate of the Mississippi Department of Corrections (MDOC)?

   Yes ( )   No (✓)

E. Have you completed the Administrative Remedy Program regarding the claims presented in this complaint?

   Yes (✓)   No ( ), if so, state the results of the procedure: _Staff did not comply_

F. If you are not an inmate of the Mississippi Department of Corrections, answer the following questions:

   1. Did you present the facts relating to your complaint to the administrative or grievance procedure in your institution?

      Yes (✓)   No ( )

   2. State how your claims were presented (written request, verbal request, request for forms): _Written, verbally, using request forms._

   3. State the date your claims were presented: _On or around ~~Jan~~ February 6, 2016_

   4. State the result of the procedure: _Verbally, cell door slammed in my face. Written, don't know if they actually ~~receid~~ received them. I even wrote a letter to Sheriff David Allison and still, no response._

3

## STATEMENT OF CLAIM

III. State here as briefly as possible the facts of your case. Describe how each defendant is involved. Also, include the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of different claims, number and set forth each claim in a separate paragraph. (Use as much space as you need; attach extra sheet if necessary.)

On or about January 8, 2016, I sent (mailed) a letter, requesting the Extract of Minute Entry from another case from St. Tammany Parish, LA., and upon delivery I noticed that my "Legal Mail" had been opened.

See attachment →

## RELIEF

IV. State what relief you seek from the court. Make no legal arguments. Cite no cases or statutes.

① Compensatory
② Punative
③ Mental Anguish

Signed this 21 day of March, 20 16.

Shelby Wayne Best #217
200 S. Main St., Poparlville, Ms. 39470
Signature of plaintiff, prisoner number and address of plaintiff

I declare under penalty of perjury that the foregoing is true and correct.

3/21/2016
(Date)

Signature of plaintiff

4

Statement Claim

Shelby Wayne Best B-3
Pearl River County Jail
200 South Main Street
Poplarville, MS. 39470

Dear Sirs,

I had been incarcerated here at the Lenoir-Roswell Criminal Justice Center (Pearl River County Jail), in Dorm A-6 for approximately 2 months when I and several other inmates were called to leave the dorm. Upon heading to the front, everyone (inmates) believed, were going to Court. Everyone was placed in order with shackles and chains, except me, I was put in hand-cuffs only. As everyone was led to the Sally-port, an Officer and I was taken a right, to Investigation. When I entered I was wondering why when an Investigator asked me if I knew Slade Penton. At any rate, this was questioning about Slade Pentons' death. After about an hour of questioning, the Officer led me back to A-6. I didn't give it much thought at the time, until the other Inmates that left had returned from Court.

Now, this is the problem, half of the Inmates in A-6 are affiliated (gang related) to one party and the other half to another. About 90% of the 78 man Dorm are incarcerated for some type of drug charge, meth, crack, manufacturing, distribution, possession.

The shot-caller (leader) of one of the two parties, happened to be in the group shipped to Court and saw me going into Investigation and now, all of a sudden, I have become a "snitch" (Confidential Informant). As you know, a title like this, in a 78 member dorm, is like oil and water.

Over the next two weeks, I was approached by this leader and his party and tried to explain the reason for the visit into Investigation but they were not buying. Thank the Lord, he was with me, literally. The tension could be cut with a knife. After a couple of weeks, without knowledge, I was moved to A-3. Just when I thought, this twenty-four man dorm was going to be fine, apparently the rumor traveled faster than me being moved. As I was asleep, in A-3 on a Friday night, I was awaked to Inmates gathered around my bed, calling me a "snitch." They had already packed my property and said, I had to move.

At this time I was moved to B-3 (lock-down), where I discovered, my Legal Mail from my Property had been taken by the Inmates in A-3. When the Shift Supervisor came around I told her and asked if I could get it back and she replied, "Now you see, that's what I'm talking about!" I said, "excuse me!" Did we already discuss this matter? And she

replied, "If I ask them in A-3 for your mail, they're going to tell me, they don't have it." "So, there's nothing we can do!" I quoted her rule (#4, see attachment → on page 6) of the Inmate Handbook, and she slammed the door in my face. For the next two weeks, I asked every Officer about my mail and that went no where. I handed the Shift Supervisor, ARP greviance forms and later found them, torn up and thrown in the garbage can in the day-room of B-3.

  Now, after being back here (B-3) almost two months, the integrity of my safety has been extremely geopardized. Apparently, rumor has found it's way back here by means of people (inmates) being placed on disciplinary.

Sincerely, Respectively,<br>In Crist,<br>Shelley Wayne Best

### Relief

① Compensatory
② Punative
③ Mental Anguish

Signed this 21st day of March, 2016,   Shelby Wayne Best #217

living area. Inmates will only be permitted to carry ID sheet.

11. When an inmate is moved to another location all their belongings will be moved with them.

12. Rack down occurs every night at 10:00 P.M. except on Friday, Saturday and holiday eves. On Friday, Saturday and nights preceding a holiday rack down will usually be a t 1:00 A.M. but can be modified at the discretion of the Shift Supervisor. Televisions may remain on after 12:00 A.M. to finish a program, at the discretion of the Shift Supervisor.

13. Televisions will not be turned on before 7:00 A.M. Television volume levels will be keep at a moderate level.

14. Inmates will not place their feet on tables, chairs or walls.

15. All housing unit fire exit doors and stairways will remain clear of inmates and obstruction at all times.

16. Inmates are not allowed out of their bunks after rack-down except to use the bathroom.

17. In the state workers dorm all chairs that are not being used must be stacked neatly.

## PROTECTION FROM HARM

Any inmate that has been sexually abused or assaulted can report in the following ways:
    A: Correction Officer
    B: Shift Supervisor
    C: Captain
    D: Major

1. Any inmate that has a fear of assault from any individual can request to be moved to another dorm or be housed in segregation through "Red Tag" procedure.

2. Treatment is available through the medical department and counseling is available by the Case Manager, Chaplain, or Mental Health Services.

3. Access to a grievance procedure – All grievances must be in writing and on supplied forms. Exceptions may be authorized by the Warden for emergencies, disabled inmates, or special conditions.

4. Inmates are not subject to personal abuse, corporal punishment, personal injury, disease, property damage or harassment. Inmate property is protected.

## ACCESS TO MEDICAL CARE
1. Access to the Medical Department and its related services may be obtained by all inmates in one of two ways:
    a. Sick Call Request Form
    b. Direct request to a security officer or supervisor

6

13. State Workers headgear and sunglasses must be removed prior to entering any building. Caps will be worn with the visor pointing forward.

14. Plain wedding bands are allowed (these bands can not exceed the value of $150.00. The Lenoir Rowell Criminal Justice Center is not responsible for theft or lost property.

15. State workers are allowed to wear wedding bands (can not exceed the value of $150.00 and watches can not exceed the value of $50.00) The Lenoir Rowell Criminal Justice Center is not responsible for theft or lost property.

## **HOUSING UNIT RULES**

1. When an inmate is assigned to a dorm it will be his responsibility to determine that his bunk and locker are free of contraband. When an inmate is assigned to a cell, it will be his responsibility to determine that the cell is free of contraband.

2. Bunks will be made up when not in use. Sheets will be tucked fully under the mattress, and the blanket will be tucked in fully under the mattress of the bunk frame. Inmates may have only one mattress, two sheets and one blanket. Exceptions will be determined by a security supervisor or medical authority. After the bed is made, inmates may lie on top of their assigned bunk. You are responsible for keeping the area around your bed clean and neat at all times.

3. Personal property is limited by the storage space under your bunk. State Workers may store items in your locker or container. Personal and facility issued shoes, slippers and shower shoes will be neatly placed on the floor underneath your bunk. Inmates will not be allowed to tape, glue or otherwise affix any item to housing unit doors, windows, wall, bunks, lockers or other fixtures.

4. Clothing, towels, etc..., will not be hung on any fixture or block any exterior windows or cell door windows. No items are to be hung so as to block the view of the housing officers. Wet towels may be draped on the railing at the foot of the bed.

5. Sexually explicit pictures will not be allowed.

6. Antennas are not allowed.

7. No cardboard boxes will be allowed in the housing unit. No items will be placed in front of or in the lights or air vents to restrict their intended purpose. Paper bags will not be used as trash containers. Newspapers, magazines and paper bags will be disposed of when no longer needed. They will not be stock piled. These items will be considered contraband or a safety hazard.

8. You may not enter any housing unit to which you are not assigned.

9. Inmates will not be allowed to sleep on another inmate's bunk with another inmate.

10. Inmates will not be allowed to carry items of personal property from the